UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH THOMAS (#510994)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 13-38-JJB-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, March 26, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOSEPH THOMAS (#510994)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 13-38-JJB-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Joseph Thomas.

For the reasons which follow, the petition should be denied.


**I. State Procedural History**

Petitioner was found guilty of one count second degree murder in the Twenty-third Judicial District Court for Ascension Parish, Louisiana on June 23, 2006.

On direct appeal the petitioner asserted the following assignments of error:

1. there was insufficient evidence to support his second degree murder conviction;

2. the trial court erred in denying his motion to sever;

3. the trial court erred in failing to give his requested accomplice jury instruction;

4. the State violated pre-trial discovery requirements when it failed to produce a readable CD of co-defendant Howard's statement to police; and,

     5.   the trial court erred in refusing to allow him to admit the statement of Erica Burris.

The Louisiana First Circuit Court of Appeal affirmed the petitioner's conviction and sentence. *State of Louisiana v. Joseph Thomas,* 2007-0709 (La. App. 1st Cir. 11/7/07) (unpublished opinion).  Petitioner sought review by the Louisiana Supreme Court, which denied review on May 16, 2008.  *State of Louisiana v. Joseph Thomas*, 2008-0006 (La. 5/16/08), 980 So.2d 708.

Petitioner signed an application for post-conviction relief ("PCRA") on May 12, 2009, and it was filed in the trial court on May 14, 2009.  Petitioner asserted the following ground for relief:

     1.   he was denied effective assistance of counsel when:

          a.   counsel failed to request a jury instruction that the guilty pleas of co-defendants could not be used as evidence of his guilt;

          b.   counsel failed to properly investigate by obtaining a copy of Emmanuel Howard's recorded statement and verify that the voice on the tape recording was in fact that of Emmanuel Howard;

          c.   counsel failed to object to the introduction of hearsay testimony by the State; and,

          d.   counsel failed to file a motion to suppress Emmanuel Howard's recorded statement.

On April 28, 2011, the petitioner appeared for an evidentiary hearing with counsel.  On that date, the trial court denied the petitioner's PCRA.  On June 1, 2012, the State filed a Motion Requesting Written Ruling.  On June 4, 2012, the trial court

2

entered a written judgment denying the PCRA.

On March 27, 2012, the petitioner was granted an extension of time until April 27, 2012 to file an application for supervisory review in the Louisiana First Circuit Court of Appeal. Petitioner's supervisory writ application was received on April 26, 2012 and stamped as filed on April 24, 2012. The Louisiana First Circuit Court of Appeal denied review on July 2, 2012. *State of Louisiana v. Joseph Thomas*, 2012-0681 (La. App. 1st Cir. 7/2/12).

Petitioner sought review in the Louisiana Supreme Court, which denied review on November 30, 2012. *State ex rel. Joseph Thomas v. State of Louisiana*, 2012-1811 (La. 11/30/12), 103 So.3d 369.

## II. Federal Procedural History

Petitioner signed his federal habeas corpus application on January 24, 2013, and it was filed on January 25, 2013.

Petitioner asserted the following grounds for relief:

Ground One:     There was insufficient evidence to support his second degree murder conviction;

Ground Two:     The trial court erred when:

a.   it denied his motion to sever pursuant to La.C.Cr.P. art. 704;

b.   it admitted a co-defendant's statement in violation of his Confrontation Clause rights; and,

c.   it failed to give a limited instruction

required by La.C.Cr.P. art. 807;[1]

Ground Three:    The State violated pre-trial discovery requirements when it failed to produce a readable CD of co-defendant Howard's statement to police in violation of La.C.Cr.P. arts. 721 and 722 only;[2]

Ground Four:     The trial court erred in refusing to allow him to admit the statement of Ericka Burris;

Ground Five:     He was denied effective assistance of counsel when:

    a.    counsel failed to request a jury instruction that the guilty pleas of co-defendants could not be used as evidence of his guilt;

    b.    counsel failed to properly investigate by obtaining a copy of Emmanuel Howard's recorded statement and verify that the voice on the tape recording was in fact that of Emmanuel Howard;

    c.    counsel failed to object to the introduction of Howard's recorded statement and failed to file a motion to suppress Emmanuel Howard's recorded statement.

### III. Applicable Law and Analysis

#### A. Timeliness

The respondent argued that the petitioner's federal habeas corpus petition is untimely.

---

[1] On direct appeal the petitioner argued in his pro se supplemental brief to the Louisiana First Circuit Court of Appeal that all three components of Ground Two violated his federal constitutional rights. Petitioner's Ground Two shall be read to assert a violation of both state and federal law.

[2] Petitioner did not assert a federal constitutional basis for this claim in briefs to the Louisiana First Circuit Court of Appeal or in his federal habeas corpus application.

Under § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act, a prisoner in custody pursuant to the judgment of a state court has a one year period within which to file an application for a writ of habeas corpus. The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).

As provided by § 2254(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending shall not be counted toward any period of limitation under this subsection.   A "properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing. *Lovasz v. Scig*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D. Tex. 1998).  A court must look to state law to determine whether a state habeas application conforms to the state's procedural filing requirements. *Wion v. Quarterman*, 567 F.3d 146, 148 (5th Cir. 2009).

A state application is "pending" during the intervals between the state court's disposition of a state habeas corpus petition and the petitioner's timely filing of petition of review at the next level. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).  An application ceases to be "pending" within the meaning of §

5

2244(d)(2) when the petitioner fails to timely file an application for supervisory review at the next level. *Id*. at 407. A state court's subsequent decision to allow review may toll the time relating directly to the application, but it does not change the fact that the application was not pending prior to the application. *Id*. After the period for appeal or seeking discretionary review has lapsed, an application ceases to be pending, but a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the "proper" filing. *Id*.

Petitioner's conviction became final on August 14, 2008.[3]

---

[3] For purposes of § 2244(d)(1)(A), a state conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2003) ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs."). Normally that time expires 90 days after the state court of last resort enters its judgment. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). But when the defendant concludes his state-court direct appeal before it reaches the state court of last resort, "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*.

This federal rule applies even where state law provides that finality occurs on a different date. *Compare* La. Code Crim. Proc. art. 922(B) (providing that the court of appeal's judgment becomes final under Louisiana law fourteen days after the rendition of judgment in all cases in which an application for a writ of review is not filed with the Louisiana Supreme Court), *and* La. Sup. Ct. R. X, § (5)(a) ("An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ...."), *with Roberts*, 319 F.3d at 693 n. 15 (noting that the judgment of an intermediate court of appeals is not final under Texas law until the mandate has issued), *and id.* at 694-95 (rejecting the argument that the mandate-issuance

(continued...)

From the date the petitioner's conviction became final on August 14, 2008, until May 12, 2009, the date the petitioner filed his PCRA, 270 days of the limitations period elapsed. From June 4, 2012, the date the trial court entered a written judgment denying the PCRA, until November 30, 2012, the date the Louisiana Supreme Court denied review, the limitations period remained tolled.

From November 30, 2012, the date the Louisiana Supreme Court denied review, until January 24, 2013, the date the petitioner mailed his federal habeas corpus application, 54 days of the limitations period elapsed. By the time the petitioner filed his federal habeas corpus application, 324 days of the limitations period had elapsed.

Petitioner's federal habeas corpus application was timely filed.[4]

---

[3](...continued)
date should determine finality under AEDPA).

[4] It appears from a review of the record that the petitioner did not immediately seek review in the Louisiana First Circuit Court of Appeal because he was waiting for a transcript of the PCRA evidentiary hearing. In addition, in his Notice of Intent to Seek Supervisory Writs, the petitioner informed the court that he had been transferred to another prison, due to a declared state of emergency, where he did not have access to his legal materials and had only recently been returned to the prison where his legal materials were located. Presumably, the state court took all of these factors into consideration when it granted the petitioner until April 27, 2012 to file an application for supervisory review in the appellate court.

**B. Standard of Review**

Section 2254(d) provides  as follows:

   (d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judgment of
a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim-
       (1) resulted in a decision that was contrary to,
       or involved an unreasonable application of, clearly
       established Federal law, as determined by the
       Supreme Court of the United States; or
       (2) resulted in a decision that was based on an
       unreasonable determination of the facts in light of
       the evidence presented in the State court
       proceeding.

Section 2254(e)(1) provides as follows:

   (e)(1) In a proceeding instituted by an application
for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court, a
determination of a factual issue made by a State court
shall be presumed to be correct.  The applicant shall
have the burden of rebutting the presumption of
correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual

determination.  It bars federal court relief unless the state court

adjudication of the claim "resulted in a decision that was based on

an unreasonable determination of the facts in light of the

evidence."  Subsection (d)(1) provides the standard of review for

questions of law and mixed questions of law and fact. *Drinkard v.*

*Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520

U.S. 1107, 117 S.Ct. 1114 (1997).

   The second clause of subsection (d)(1) refers to mixed

questions of law and fact because it speaks of an "unreasonable

8

application of ... clearly established Federal law."  When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case.  The first clause of subsection (d)(1) refers to questions of law.  When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id*.

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011).  Review under § 2254(d)(1) focuses on what a state court knew and did.  *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id*., at 1400.  State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S.

63, 71-72, 123 S.Ct. 1166 (2003).  *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).  *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[5]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court.  *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 1519 (2000).  If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case."  *Id*., at 413, 120 S.Ct. at 1523.

**C. Claims**

**Ground One: Insufficient Evidence**

In Ground One the petitioner argued there was insufficient

---

[5] The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law.  *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

evidence to support his second degree murder conviction. Specifically, the petitioner argued that the testimony of co-defendants Montreal Veal and Joshua Weatherspoon was self-serving and was not corroborated with any physical evidence.[6]

The standard for gauging the sufficiency of the evidence to support a conviction is well established. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original). Even if state law would impose a more demanding standard of proof, only the *Jackson* standard must be satisfied to maintain the constitutionality of a conviction. *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992); *Schrader v. Whitley*, 904 F. 2d 282, 284 (5th Cir.), cert. denied, 498 U.S. 903, 111 S.Ct. 265 (1990). The evidence may be found sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence. *Gilley, supra; Gibson v. Collins*, 947 F.2d 780, 783

---

[6] Petitioner was charged by grand jury indictment with one count second degree murder. The same indictment also charged Montreal Veal, Joshua Weatherspoon and Emanuel Howard with second degree murder. Prior to trial, Veal and Weatherspoon each plead guilty to a lesser charge of conspiracy to commit second degree murder. As part of their plea agreement, Veal and Weatherspoon agreed to testify against the petitioner and Howard. *Thomas*, 2007-0709, p. 2.

(5th Cir. 1991).  The *Jackson* standard applies to both bench and jury trials.  *Jackson*, 433 U.S. at 309, 311 and n. 3, 317 n. 8, 99 S.Ct. at 2783, 2785 and n. 3, 2788 and n. 8.

The substantive elements which the state must prove to convict a defendant are determined by state law.  At the time of the petitioner's offense, second degree murder included "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm."  LSA-R.S. 14:30.1.

A review of the trial transcript shows that a fair and accurate summary of the evidence was provided by the Louisiana First Circuit Court of Appeal in its opinion.  *Thomas*, at 1-3.

The Court of Appeal made the following factual findings:

> The State presented eyewitness testimony from Veal and Weatherspoon that defendant began firing at [the victim Jerron] Glasper as Glasper began to run away from them as they rushed from defendant's vehicle.  Both Veal and Weatherspoon also testified that defendant indicated he had thrown his weapon into the woods across the highway and explained his actions by indicating he had just had an "urge" to shoot Glasper.
>
> The jury was aware that both Veal and Weatherspoon had previously pled guilty to conspiracy to commit second degree murder in exchange for testifying against defendant and Howard.  Although Veal admitted he had Howard's gun in his possession while at the Shell station, Veal explained that Howard had asked him to retrieve the weapon from beneath the seat of his vehicle.  Both Veal and Weatherspoon denied they had a weapon during the encounter where Glasper was killed.
>
> Veal admitted that he lied to the police in his initial statement, but explained that he was afraid.  Veal acknowledged that he and Weatherspoon were cousins, but denied that he could speak with Weatherspoon at any time while they both awaited trial.  Veal specifically denied that he "rehearsed" his testimony with Weatherspoon.  Moreover, when Weatherspoon made his April

12, 2005 statement implicating defendant, he testified
that he was unaware that Veal had previously made a
statement implicating defendant.  Moreover, Howard's
statement that was played for the jury also identified
defendant as being the first person to fire at Glasper.
....
The jury was aware of the circumstances affecting
Veal's and Weatherspoon's credibility and still chose to
accept their testimony.  Defendant had ample opportunity
to cross-examine both Veal and Weatherspoon on issues
affecting their credibility.

*Thomas,* 2007-0709, p. 4.

The evidence introduced at trial was sufficient to support the
petitioner's conviction for second degree murder.  The *Jackson*
standard requires only that any rational trier of fact could have
found the essential elements of the crime beyond a reasonable
doubt.  *Gilley*, *supra*.  That standard was met in this case.
Petitioner has not shown that the state courts' adjudication of his
insufficiency of the evidence claim satisfies either of the
criteria of section 2254(d).  Petitioner's insufficiency of the
evidence claim has no merit.

### Grounds Two (a) and (c), and Ground Three:
### Claims Not Within Scope of Federal Habeas Corpus

In the first and third components of Ground Two the petitioner
argued that the trial court erred in denying his motion to sever
pursuant to La.C.Cr.P. art. 704 and failed to give a limited
instruction required by La.C.Cr.P. art. 807.

In Ground Three the petitioner argued only that the State
violated pre-trial discovery in violation of state law.

13

A federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Insofar as the foundation of the petitioner's habeas application rests on the proper interpretation and application of state jurisprudence and procedural rules, this is an issue not within the scope of federal habeas corpus.

### Ground Two (a): Failure to Sever

Petitioner and Howard were tried before a jury in the same proceeding. In the first component of Ground Two the petitioner argued that the trial court erred in denying his motion to sever.

The United States Supreme Court has declined to mandate severance any time co-defendants have conflicting defenses. *See Zafiro v. United States*, 506 U.S. 534, 538-39, 113 S.Ct. 933, 937-38 (1993). The mere fact that co-defendants have "mutually antagonistic defenses" does not require the trial court to sever the case. *Id*. at 538, 113 S.Ct. at 938. Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

14

prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. at 938.

The Louisiana First Circuit Court of Appeal found that the trial court had properly exercised its discretion in denying the petitioner's request for severance and found that the petitioner had presented no evidence to the trial court showing undue prejudice. *State of Louisiana v. Joseph Thomas,* 2007-0709 at 4-5.

Petitioner has not shown that "there [was] a serious risk that a joint trial ... compromise[d] a specific trial right ... or prevent[ed] the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. at 539, 113 S.Ct. at 938.

## Ground 2(b): Confrontation Clause Violation

In the second component of Ground Two the petitioner argued that the admission of non-testifying codefendant Howard's out-of-court recorded statement violated his Sixth Amendment right to confrontation.[7]

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI.  The Supreme Court has long held that this clause prohibits the admission of a non-testifying codefendant's out-of-court testimony that names or incriminates the

---

[7] Neither defendant testified at the trial.

other defendants.  *Bruton v. United States*, 391 U.S. 123, 135-36, 88 S.Ct. 1620, 1627-28 (1968).

"Alleged  Confrontation  Clause  violations  are  subject  to harmless error analysis" when objection to the evidence is made at trial.  *United States v. Cantu-Ramirez*, 669 F.3d 619, 631 (5th Cir. 2012).  When a defendant fails to make an objection at the time of the  evidence's  admission,  review  is  limited  to  plain  error. *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 1428 (2009); *United States v. Cartwright*, 6 F.3d 294, 300 (5th Cir. 1993).

Neither the petitioner nor Howard moved to suppress Howard's out-of-court statement.  When the State moved to introduce Howard's tape recorded statement the trial judge noted that no motion to suppress was filed,[8] and he then corrected the record to note that Howard filed a Motion to Suppress but withdrew it.[9]  Howard's statement was admitted into evidence and the recording was played for the jury.[10]  In his recorded statement, Howard implicated the petitioner in the murder.[11]

Petitioner's failure to object at trial does not impose a procedural bar to this court's consideration of the petitioner's

---

[8] State Court Record, Vol. 2, pp. 728, 730.

[9] *Id*. at 735.

[10] *Id*. at 736, 738-802..

[11] *Id*. at 757, 764, 765, 766, 774, 776, 777, 778.

claim because the state courts did not impose that bar themselves.[12] However, because the petitioner failed to timely object to the introduction of Howard's recorded out-of-court statement, he must demonstrate that admission of the statement was plain error. *Clark v. Maggio*, 737 F.2d 471, 478 (5th Cir. 1984), *cert. denied*, 470 U.S. 1055, 105 S.Ct. 1761 (1985).  To meet this high bar, the petitioner must show that: (1) there is error; (2) the error was clear and obvious, not subject to reasonable dispute; and (3) the error affected his substantial rights. *United States v. Hebron*, 684 F.3d 554, 558 (5th Cir. 2012).

The trial court erred in admitting Howard's out-of-court statement and the error was clear and obvious, not subject to reasonable dispute.  But the petitioner has failed to establish that admission of Howard's out-of-court statement affected his substantial rights.

To show that the error affected his substantial rights, the petitioner "must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 1429 (2009).  Petitioner argued only that Howard's out-of-court statement was secretly recorded, the State

---

[12] Under Louisiana law, trial errors are reviewable only if an objection is made at the time of their occurrence. La.Code Crim.Proc. art. 841.  The State, did not argue that this claim is procedurally barred and the appellate court reached the merits of this claim.  Thus, there is no procedural bar to this court's consideration of the claim.

did not reveal the existence of the recording until the day before trial, and the transcript of the recording was not edited or redacted.[13]

The Louisiana First Circuit Court of Appeal made the following factual findings:

> Without Howard's statement there was ample evidence for the jury to convict the defendant. Both Veal and Weatherspoon testified that the defendant was one of the shooters; thus, the statement is cumulative and corroborated by their testimony. Both Veal and Weatherspoon were cross-examined by defendant's attorney.

*Thomas,* 2007-0709, p. 11.

Here, none of the information supplied by Howard's recorded statement was crucial to the State's case. As noted by the First Circuit Court of Appeal, both Veal and Weatherspoon testified that the petitioner was one of the shooters.

Veal testified that he entered a guilty plea to conspiracy to commit second degree murder in exchange for testifying truthfully for the State against Howard and Thomas.[14] Veal testified that no agreement was made regarding the length of his sentence.[15] Veal testified that in November 2004 his 1974 Cutlass was stolen outside

---

[13] Record document number 13, p. 7, Memorandum in Support of Petition For Writ of Habeas Corpus Pursuant to 28 U.S.C. §§ 2241 and 2254.

[14] State Court Record, Vol. 2, p. 845.

[15] *Id.* at 846.

18

of a Fina gas station.[16] Veal testified that he left the keys in the car and the car was running when he went inside the store.[17] Veal testified that after he discovered his car had been stolen he went across the street to a police station to report the stolen car, but he was unable to provide the police with the license plate number.[18]

Veal testified that while walking home he saw his friend Genero at a traffic light and Genero gave him a ride back to the Fina gas station.[19] Veal testified that Howard was at the Fina gas station when he arrived and he told Howard that his car had been stolen.[20] Veal testified that he got into Howard's car and Howard telephoned the petitioner and Weatherspoon, who were riding around together in another car, and told them to look for Veal's car.[21] Veal testified that his cousin Cosmos telephoned Howard and asked to speak to him (Veal).[22] Veal testified that Cosmos told him he

---

[16] *Id.* at 846-847.

[17] *Id.* at 847.

[18] *Id.*

[19] *Id.* at 847-848.

[20] *Id.* at 848.

[21] *Id.* at 849-850.

[22] *Id.* at 850.

saw Veal's car at a Shell gas station near Memorial Stadium.[23]  Veal testified that Cosmos' real name is Cornell Cummins.[24]  Veal testified that they called the petitioner and Weatherspoon and told them to meet him and Howard at the Shell gas station on Plank Road and Highway 22.[25]  Veal testified that the clerk in the Shell gas station confirmed seeing Veal's car and the man who was driving it.[26]

Veal testified that Howard told him to reach for his (Howard's) gun under the driver's seat and hand it to him, and Veal complied.[27]  Veal testified that the gun was a black Glock 40.[28]

Veal testified that after they finished getting gas for the car they got on the interstate and Howard called the petitioner and told him they were going to ride down the interstate and look for Veal's car.[29]  Veal testified that the petitioner also got on the interstate to look for the car.[30]

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 851.

[26] *Id.*

[27] *Id.* at 852.

[28] *Id.*

[29] *Id.*

[30] *Id.*

Veal testified that when they got to the Tanger Mall exit, the oil warning light came on in Howard's car, so Howard called the petitioner and told him he (Howard) was going to park his car at a gas station.[31]   Veal testified that he and Howard got into the petitioner's car and the group went back on the interstate.[32]   Veal testified that near an interstate rest stop they saw his car parked on the side of the road and pulled up in front of it.[33]

Veal testified that the petitioner was in the driver's seat, Howard was in the front passenger seat, Weatherspoon was seated in the rear behind the driver (the petitioner) and he was seated in the back seat behind Howard.[34]   Veal testified that the petitioner pulled up in front of the car operated by the victim (later identified as Jerron Glasper) and told the others to stay in the car.[35]   Veal testified that the petitioner exited his car and went to speak with the victim.[36]   Veal testified that after he, Howard and Weatherspoon exited the petitioner's car the victim took off

---

[31] *Id.* at 852-853.

[32] *Id.* at 853.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 853-854.

[36] *Id.* at 854.

21

running.[37] Veal testified that the petitioner took out his gun and started shooting, and then Howard took his gun out and started shooting too.[38] Veal testified that he saw the victim fall.[39] Veal testified that the petitioner said he threw his gun.[40] Veal testified that they got in the petitioner's car and drove off.[41] Veal testified that when Howard asked the petitioner why he started shooting, the petitioner responded, "It was the urge, Bro."[42]

Weatherspoon testified that he entered a guilty plea to conspiracy to commit second degree murder in exchange for testifying truthfully for the State against Howard and Thomas.[43] Weatherspoon testified that no agreement was made regarding the length of his sentence.[44]

Weatherspoon testified that in November 2004 he and the petitioner were sitting on Georgia Street when the petitioner got a telephone call from Howard asking them to look for Veal's stolen

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 855.

[43] *Id.* at 875.

[44] *Id.* at 876.

car in the south Baton Rouge area.[45]

Weatherspoon testified that they spotted Howard and Veal in Howard's car and then they received a telephone call from them telling them that Veal's cousin had spotted the stolen car at a Shell station.[46]  Weatherspoon testified that they met at the Shell station on Plank Road.[47]  Weatherspoon testified that they spoke to the store clerk about the stolen car and she told them that she had seen it and that the driver was headed for New Orleans.[48]

Weatherspoon testified that they got gas and then headed towards Gonzales on the interstate looking for Veal's stolen car.[49] Weatherspoon testified that he and petitioner were in the petitioner's car and Howard and Veal were in Howard's car.[50]

Weatherspoon testified that they got off the interstate at the Gonzales exit and went to the Jet 24 store, where Howard parked his car and they all got into the petitioner's car.[51]  Weatherspoon testified that they got back on the interstate heading towards New Orleans, spotted the stolen car, and pulled over onto the shoulder

---

[45] *Id.* at 876-877.

[46] *Id.* at 877.

[47] *Id.*

[48] *Id.* at 878.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 879.

of the interstate.[52]

Weatherspoon testified that he, Howard and Veal ducked down in the petitioner's car and the petitioner got out and went to speak to the victim.[53]  Weatherspoon testified that the petitioner asked the victim if he needed help and the victim said he was trying to get to New Orleans.[54]  Weatherspoon testified that the petitioner said he was not going as far as New Orleans but that he could give the victim a ride to get some gas.[55]

Weatherspoon testified that as the victim was walking up to the petitioner's car they all jumped out of it.[56]  Weatherspoon testified that Howard started chasing the victim, and as Howard was almost gaining on the victim, the petitioner started shooting at the victim.[57]  Weatherspoon testified that after the petitioner started shooting at the victim, Howard started shooting at the victim.[58]  Weatherspoon testified that the victim fell face first.[59] Weatherspoon testified that Veal went to his (the stolen) car to

---

[52] *Id.* at 879-880.

[53] *Id.* at 880.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

24

get his keys, and when he could not find the keys they all returned to the petitioner's vehicle.[60]  Weatherspoon testified that before they got into the petitioner's vehicle, the petitioner threw his gun across the street from the rest area.[61]  Weatherspoon testified that following the shooting the petitioner explained that he had an "urge" to shoot the victim.[62]  Weatherspoon testified that Howard and the petitioner discussed which one of them actually hit the victim.[63]

Given the trial testimony of Veal and Weatherspoon, the trial court's error in admitting Howard's recorded out-of-court statement did not affect the petitioner's substantial rights.  Petitioner's Confrontation Clause claim is without merit.

### Ground Two (c): Accomplice Instruction Violation

In the third component of Ground Two the petitioner argued that the trial court failed to give a requested limited instruction.  Specifically, the petitioner argued that the trial court should have given his requested "accomplice instruction regarding co-defendant's statements and accomplice testimony" jury charge, i.e. when an accomplice or codefendant provides testimony

---

[60] *Id.* 880-881.

[61] *Id.* at 881.

[62] *Id.*

[63] *Id.*

that tends to shift the blame from himself or another codefendant, then the jury should be instructed that the testimony is inherently unreliable and presumptively untrustworthy.[64]

When reviewing a challenged jury instruction under § 2254, the Supreme Court has directed that "'[t]he only question ... is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Weeks v. Scott*, 55 F.3d 1059, 1065 (5th Cir. 1995) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991) (internal quotation omitted). "It is well-established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *McGuire*, 502 U.S. at 72, 112 S.Ct. at 482 (internal quotation marks omitted).

An accomplice instruction is designed to warn the jury that an alleged accomplice who testifies against a defendant for his personal advantage should be held to a more stringent level of scrutiny by the jury than an ordinary witness. *United States v. Cureaux*, 9 F.3d 104, n. 3 (5th Cir. 1993).

The refusal to give a jury instruction amounts to reversible error only if the instruction requested (1) was substantially correct, (2) was not substantially covered in the charge delivered to the jury, and (3) concerned an important issue so that the

---

[64] *Id*. at 913-914.

failure to give it seriously impaired the defendant's ability to present a given defense. *United States v. Torres*, 281 Fed.Appx. 394, 401 (5th Cir. 2008).

In Louisiana, as a general principal of law, a conviction may be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat such testimony with great caution. *State v. Tate*, 01-1658 (La. 5/20/03), 851 So.2d 921, 928, *cert. denied*, 541 U.S. 905, 124 S.Ct. 1604 (2004).

First, the petitioner has failed to establish that under Louisiana law, the proposed jury charge was substantially correct.

Second, the instruction on general witness credibility contained a caution regarding witness bias. Specifically, the charge provided the following:

> The testimony of a witness may be discredited by showing that the witness will benefit in some way by the defendant's conviction or acquittal, that the witness is prejudiced, or that the witness has any other reason or motive for not telling the truth.

*State of Louisiana v. Joseph Thomas*, No. 18,082.[65]

The trial court did not abuse its discretion in refusing the requested jury charge.

### Ground Four: Statement of Ericka Burris

In Ground Four the petitioner argued that the trial court

---

[65] State Court Record, Vol. 2, p. 955.

erred in ruling that the statement of Ericka Burris was inadmissible.

Burris was one of two clerks who worked at the Shell station where the victim allegedly stole Veal's car. At the time of trial, Burris could not be located.[66] Petitioner sought to introduce the statement.[67] The trial court held that the statement was inadmissible and defense counsel proffered the statement.[68]

Any errors alleged by the petitioner which are based on violations of state law are not properly considered on federal habeas review. It is well settled that states are free to implement procedures regarding the presentation and admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Riggins v. Nevada*, 504 U.S. 127, 147, 112 S.Ct. 1810, 1821 (1992). Federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Id*.

Det. John Hebert testified that Burris witnessed Veal give Howard a gun while they were in the parking lot (of the Shell

---

[66] *Id*. at 536.

[67] *Id*. at 828.

[68] *Id*. at 831–832.

station).[69]   Det. Hebert testified that Burris identified Veal by in a photographic lineup as the person she saw with a weapon in the Shell station parking lot.[70]   Det. Hebert testified that Burris stated she witnessed Veal hand the gun to Howard.[71]

Through Det. Hebert's testimony, the substance of Burris' statement was reported to the jury.   As such, the petitioner's trial was not rendered fundamentally unfair.

### Ground Five: Ineffective Assistance of Counsel

In Ground Five the petitioner argued that he was denied effective assistance of counsel.

Section 2254(d) applies to the petitioner's ineffective assistance of counsel claim because that claim was adjudicated on the merits in state-court proceedings.[72]   Section 2254(d) applies even where, as in the petitioner's case, there was a summary denial.   *Cullen v. Pinholster*, 131 S.Ct. at 1402.   In these circumstances, the petitioner can satisfy the "unreasonable application" prong of § 2254(d)(1) only by showing that "there was no reasonable basis" for the Louisiana Supreme Court's decision.

---

[69] *Id*. at 815.

[70] *Id*. at 816.

[71] *Id*.

[72] *State of Louisiana v. Joseph Thomas*, 2012-0681 (La. App. 1st Cir. 7/2/12); *State ex rel. Joseph Thomas v. State of Louisiana*, 2012-1811 (La. 11/30/12), 103 So.3d 369.

Petitioner did not specifically argue that the state court's determination of his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, namely *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.   To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064.   To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; that probability requires a "substantial," not just "conceivable," likelihood of a different result, *Harrington v. Richter*, _____ U.S. _____,___, 131 S.Ct. 770, 792 (2011).

Habeas review or an ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112, 129 S.Ct. 1411 (2009), requiring a "highly deferential" look at counsel's performance, *Strickland, supra*, at 689, 104 S.Ct. at 2065, through § 2254(d)'s "deferential lens," *Mirzayance, supra*, at 121, n. 2, 1419 n. 2.

In the first component of Ground Five the petitioner argued that he was denied effective assistance of counsel when counsel failed to request a jury instruction that the guilty pleas of co-defendants could not be used as evidence of his guilt.

Even if the court assumes that, by failing to request a special jury instruction, the performance of counsel fell below an objective standard of reasonableness, the petitioner suffered no prejudice.  The trial court instructed the jury to consider each defendant's guilt or innocence independently and separately.[73] Moreover, the evidence of the petitioner's guilt was overwhelming.

In the second component of Ground Five the petitioner argued that he was denied effective assistance of counsel when counsel failed to properly investigate because he did not obtain a copy of Howard's recorded statement, and when counsel failed to verify that the voice on the recording was Howard's.[74]

---

[73] *Id*. at 956.

[74] In his Memorandum in Support of Petition For Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and 2254, the petitioner argued
(continued...)

"In  assessing  the  reasonableness  of  an  attorney's investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S.Ct. 2527, 2538 (2003).

First,  prior  to  trial  counsel  received  a  compact  disc containing Howard's recorded statement and a transcript of the statement.[75]  Second, there was no dispute that Howard provided a recorded  statement  to  police.   Howard  did  not  challenge  the authenticity  of  the  recording  when  it  was  introduced  at  trial. Petitioner did not offer any basis upon which counsel could have questioned  the  authenticity  of  Howard's  recorded  statement,  and there is none apparent from the state court record.  Without more, the  petitioner's  argument  is  conclusory.   "Mere  conclusory allegations  in  support  of  a  claim  of  ineffective  assistance  of

---

[74](...continued)
that Howard denied making a recorded statement.  Record document number 13, p. 11.  In footnote one, the petitioner indicated that a notarized affidavit of Emanuel Howard was attached.  However, no exhibits were attached to the memorandum.  Moreover, there is no evidence that Howard's purported affidavit was before the state PCRA court.  Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011).

[75] State Court Record, Vol. 1, pp. 162-163, 169-170, Transcript on Motion to Adopt Codefendant's Motions, Motion to Sever, Motion for Production of Documents (Second Degree Murder, Illegal use of Weapons or Dangerous Instrumentalities).

counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

In the third component of Ground Five the petitioner argued that he was denied effective assistance of counsel when counsel failed to object to the introduction of Howard's recorded statement and when counsel failed to file a motion to suppress the statement.

Neither the petitioner nor Howard moved to suppress Howard's recorded statement. When the State moved to introduce the statement,[76] the trial judge noted that no motion to suppress was filed[77] and then later corrected the record to note that Howard filed a Motion to Suppress but withdrew it.[78] Howard's statement was admitted into evidence[79] and the recording was played for the jury.[80] In his statement, Howard implicated the petitioner in the murder.[81]

Even assuming that counsel was deficient for failure to move to suppress Howard's recorded out-of-court statement, the petitioner failed to establish that he was prejudiced. None of the information supplied by Howard's statement was crucial to the

---

[76] State Court Record, Vol. 2, p. 728.

[77] *Id.* at 730.

[78] *Id.* at 735.

[79] *Id.* at 736.

[80] *Id.* at 738-802.

[81] *Id.* at 757, 764, 765, 766, 774, 776, 777, 778.

State's case.   Both Veal and Weatherspoon testified that the petitioner shot the victim.   Both witnesses were subject to cross-examination.   Petitioner failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   Petitioner's ineffective assistance of counsel claim is without merit.

**<u>RECOMMENDATION</u>**

It is the recommendation of the magistrate judge that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Joseph Thomas be denied.

It is further recommended that a certificate of appealability be denied for the reasons set forth herein.

Baton Rouge, Louisiana, March 26, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE